**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**MAY 18, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

IN RE:

**GRAND PRIX ASSOCIATES INC..,** *et al.*

Debtors in Foreign Proceedings.

Case No.:   09-16545 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Cole Schotz, Meisel, Forman & Leonard, P.A.
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
*Co-Counsel for Petitioner Plaza Management Overseas S.A., in its capacity
as the Foreign Representative*


Moses & Singer LLP
Alan Kolod, Esq.
Mark N. Parry, Esq.
Declan M. Butvick, Esq.
The Chrylser Building
405 Lexington Avenue
New York, New York 10174
*Co-Counsel for Petitioner Plaza Management Overseas S.A., in its capacity
as the Foreign Representative*


Wollmuth Maher & Deutsch LLP
Paul DeFilippo, Esq.
One Gateway Center, Ninth Floor
Newark, New Jersey 07102
*Co-Counsel for the CS SP Parties*


Davis Polk & Wardwell
Lawrence Portnoy, Esq.
Thomas Ogden, Esq.
Boris Ayala, Esq.
Marcelo Blackburn, Esq.
450 Lexington Avenue
New York, New York 10017
*Co-Counsel for the CS SP Parties*

Connell Foley LLP
Stephen V. Falanga, Esq.
85 Livingston Avenue
Roseland, New Jersey 07068
*Co-Counsel to Hellman & Friedman Capital Partners VI, L.P. and*
*Blackstone Managed Investment Partnerships*


Simpson Thacher & Bartlett LLP
Mark Thompson, Esq.
Joseph M. McLaughlin, Esq.
425 Lexington Avenue
New York, New York 10017
*Co-Counsel to Hellman & Friedman Capital Partners VI, L.P. and*
*Blackstone Managed Investment Partnerships*


Pashman Stein
Sean Mack, Esq.
Court Plaza South
21 Main Street, Suite 100
Hackensack, New Jersey 07601
*Co-Counsel to Carlyle Entities*


Debevoise & Plimpton LLP
Maureen Cronin, Esq.
919 Third Avenue
New York, New York 10022
*Co-Counsel to Carlyle Entities*


Office of the United States Trustee
Donald MacMaster, Esq.
One Newark Center, Suite 2100
Newark, New Jersey 07102

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the Amended Verified Joint Petition under Chapter 15 ("Amended Chapter 15 Petition") of the United States Bankruptcy Code filed by Plaza Management Overseas S.A. ("Plaza Management"), in its capacity as foreign representative of Grand Prix Associates Inc. and its jointly administered affiliates ("Grand Prix" or "Foreign Debtors")[1], seeking recognition of the Foreign Debtors' insolvency proceeding pending in the British Virgin Islands ("BVI Proceeding") as a foreign main proceeding pursuant to Sections 1502(4) and 1517(b)(1). The Court has reviewed the *Amended Chapter 15 Petition*, the *Joint Memorandum of Law in Support of Recognition of a Foreign Proceeding as a Foreign Main Proceeding* and accompanying exhibits, the *Verified Petition for Recognition of a Foreign Proceeding Pursuant to 11 U.S.C. §§ 1515 and 1517 (dated March 18, 2009),* including the *Declaration of Tom Meganck, as Director of the Foreign Representative of the Petitioner, Pursuant to Section 1515(c) of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) ("Meganck Decl."), Objection of Hellman & Friedman Capital Partners VI, L.P. ("Hellman"),* and the *Statement of CS SP Parties.*[2] In addition, the Court heard the arguments of Counsel. The facts set forth herein are taken from the record before the Court.

The Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of Title 28 and Section 1501 of Title 11. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(P).

---

[1] The jointly administered affiliates are: Grand Prix Associates Inc., Bundora Associates Inc., Bundora Investments Limited, Bundora Investments N.V., Ruby Investment Sp. z.o.o., Bundora Corp., Lockhart Overseas Investments Corp., Lockhart Limited, Naven Investments Sp. z.o.o., Lockhard Corp. I, and Shelby Overseas Invest & Trade Ltd.

[2] The CS Lenders consist of CS Structured Strategies B, L.P, CS Strategic Partners Holdings IV, L.P., CS Strategic Partners IV Investments, L.P, CS Structured Strategies A, L.P., CS Structured Strategies A (RE), L.P., CS Structured Strategies B (RE), L.P., and CSFB Strategic Partners III RE Holdings, L.P. ("CS SP Parties").

Venue in the District of New Jersey is proper under 28 U.S.C. Section 1410(1) and (3) as the principal assets are located in New Jersey.

## Statement of Facts and Procedural History

**I.    Events Leading to the Filing of the Amended Chapter 15 Petition**

On March 13, 2009, the Foreign Debtors commenced proceedings in the British Virgin Islands ("BVI") in the Eastern Caribbean Supreme Court, High Court of Justice, BVI ("BVI Court"). The Order entered by the BVI Court appointed Plaza Management as foreign representative of the Foreign Debtors "for the purpose of contemplated cross-border insolvency proceedings." *See Meganck Decl., Ex. C.* Plaza Management is a family-owned corporation managing global investment portfolios. Bundora Associates, Inc., Shelby Overseas Invest & Trade Ltd., and Lockhart Overseas Investment Corp. (collectively referred to as "Principal Debtors") began investing in private equity limited partnerships prior to April 2006. Blackthorne Property, Inc. ("Blackthorne") partially funded the investments in exchange for a registered floating charge under BVI law against the assets of the Principal Debtors.

Initially, Plaza Management submitted that the Foreign Debtors had negotiated a settlement with Blackthorne in full satisfaction for the amounts due and owing. The CS SP Parties contend that the transfer of $340 million to Blackthorne constituted fraud.

By way of background, in April 2006, Plaza Management and Credit Suisse Strategic Partners ("CSSP") entered into a joint venture where various funds controlled by CSSP extended funding to the Principal Debtors in the form of loans, which would be used to satisfy capital calls by the limited partnerships in which the Principal Debtors had invested. To date, the Principal

5

Debtors have $364,190,000 in unfunded capital calls and CSSP funds have invested approximately $751,000,000 in the Principal Debtors.

Plaza Management and the CS SP Parties provide differing facts regarding the formation of their agreements. Plaza Management states that CSSP's counsel erred in the preparation of the credit documents because CSSP was to take pledges of the Foreign Debtors' shares and the Foreign Debtors were to pledge accounts and securities. The pledged accounts and securities are held by Pershing LLC, which has its principal office at One Pershing Place, Jersey City, New Jersey. Also, a net asset value ratio covenant was included, which would put the Principal Debtors in default if the market value of the private equity funds fell below the loan-to-value ratio. Purportedly, CSSP and its counsel knew that a Financial Accounting Standards Board standard was about to be adopted that would allow CSSP to declare default based upon an appraisal even if no actual loss occurred. However, the Principal Debtors were unaware of this standard. Plaza Management also contended that CSSP encouraged conduct by the Principal Debtors that lacked profitability. The Foreign Debtors believe that the valuations will result in an attempt by the CS SP Parties to foreclosure on the pledges. Plaza Management also contends that the Principal Debtors will be unable to satisfy capital calls and will risk forfeiture of their limited partnership interests. According to Plaza Management, this was the basis for the commencement of the foreign proceeding.

Conversely, the CS SP Parties state that throughout the negotiations of the original agreement as well as the subsequent amendments, the agreements were based upon the Foreign Debtors' representations that they were debt free and would remain so. It is this representation that the CS SP Parties believe to be the basis of the purported fraudulent Blackthorne settlement. Bundora's audited financial sheets for 2006 and 2007 did not indicate a debt to Blackthorne. Rather,

the only debt disclosed is that of Group Plaza Entities, which the CS SP Parties believe to be affiliates of Plaza Management.

The CS SP Parties also allege that they had no indication from the Foreign Debtors that a foreign insolvency proceeding was being commenced and thus they did not issue a notice of default. Moreover, at the time they were so informed by the Foreign Debtors of the proceeding, the Foreign Debtors also requested an advance of approximately $4 million. In addition to opposing the provisional relief sought, the CS SP Parties also requested expedited discovery in preparation for a trial on the Chapter 15 Petitions of the Foreign Debtors.

On March 24, 2009, the CS SP Parties commenced an action in the Supreme Court of the State of New York against Plaza Management, Blackthorne, Dickson Invest & Trade Ltd. ("Dickson"), and the principals of the Foreign Debtors. The New York Court entered temporary restraints against the state court defendants prohibiting the transfer of assets. The temporary restraining order remains in effect until July 16, 2009, with a modification allowing for the implementation of the proposed settlement.

Hellman and Blackstone also have been involved in this case from its inception. Bundora Associates ("Bundora") is a party to a limited partnership agreement pursuant to which Hellman is organized. Bundora subscribed for a $20,000,000 capital commitment with approximately $7,600,000 remaining to be funded. Hellman's initial objection to the Chapter 15 Petition related to the prohibition to transfer, encumber, or dispose of assets except by the Foreign Debtors as provided by the temporary restraining order. Hellman submitted that its day-to-day operations may not be restricted more than allowed under the Bankruptcy Code. Hellman also requested the posting of a bond in the amount of the unfunded capital commitment to protect its interests. Blackstone-

Managed Investment Partnerships ("Blackstone"),[3] joined in Hellman's objection. Bundora and Lockhart Corp. are limited partners with Blackstone. Bundora/Lockhart subscribed to approximately $365,000,000 with approximately $133,000,000 remaining unfunded.

On April 2, 2009, after conferences regarding discovery and a trial on the Chapter 15 Petitions, the Court entered an Order granting Provisional Relief under Section 1519 imposing the automatic stay pursuant to Section 362 on the Foreign Debtors' assets and further order from the BVI Court.

## II.     Amended Chapter 15 Petition Currently Before the Court

The parties engaged in extensive negotiations that has resulted in a proposed Master Settlement Agreement and the filing of the Amended Chapter 15 Petition that are currently before the Court. The Foreign Debtors and CS SP Parties submit that without the Master Settlement Agreement, the CS SP parties would have foreclosed upon the pledges on the shares of Grand Prix and the pledged accounts and securities. The proposed settlement ensures the Foreign Debtors' ability to satisfy capital calls to avoid forfeiture of their limited partnership interests.

The proposed Master Settlement Agreement will be before this Court pursuant to Rule 9019 and Section 363 seeking its approval at a later date. However, for the sake of completeness, a brief summary of the proposed settlement is provided herein.[4] The proposed Master Settlement Agreement is between the Foreign Debtors, the Defendants in the New York state court action, and the CS SP Parties. The proposed settlement contemplates the transfer of certain limited partnership

---

[3] The partnerships are: Blackstone Capital Partners V L.P., BCP V-S L.P., BCP V Co-Investors L.P., Blackstone Real Estate Partners V L.P., Blackstone Real Estate Partners V.F L.P., Blackstone Real Estate Partner VI.F L.P. and each of their respective "alternative investment vehicles."

[4] The discussion of the proposed Master Settlement Agreement does not constitute any finding by this Court with respect to propriety or approval of the settlement.

interests from the Foreign Debtors to the CS SP parties for monetary consideration, mutual releases, and the redemption and cancellation of preferred stock. In addition, Blackthorne and Dickson agree to transfer back the stock and interests to the Foreign Debtors to facilitate the implementation of the proposed settlement. Plaza Management explained at the hearing that the Amended Chapter 15 Petition was filed to disclose the proposed settlement, the corresponding documents, and the transfers back from Dickson to Bundora.

As part of the proposed settlement, the CS SP Parties withdraw their opposition and support the recognition of the BVI Proceeding as a foreign main proceeding. In the statement filed in support of recognition, the CS SP Parties submit that the proposed settlement restores the positions of the Foreign Debtors prior to their transfer to Blackthorne and provides for mutual releases utilizing Chapter 15 of the Bankruptcy Code. Furthermore, the settlement resolves the New York state court action. The CS SP parties reserve their rights to answer the Amended Chapter 15 Petitions and proceed with a trial schedule in the event the proposed settlement is not approved by this Court.

In its objection to the recognition of the Amended Chapter 15 Petition, Hellman submits that while it supports the principal resolution, it considers certain relief sought unnecessary to achieve the resolution, particularly recognition of the Chapter 15 Petitions. Prior to the hearing, Plaza and Hellman resolved the objection and Hellman consented to the proposed form of Order presented to

the Court. Additionally, the Court was informed the Carlyle Entities,[5] without submission of a formal objection, negotiated with Plaza to resolve its dispute over the proposed form of Order.

## Discussion

### I.     Chapter 15 of the Bankruptcy Code

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress enacted Chapter 15 of the Bankruptcy Code implementing the Model Law on Cross-Border Insolvency ("Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL"). *See* 11 U.S.C. §1501(a) (2009). The objectives of Chapter 15 are:

> [C]ooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protect the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses.

*In re Oversight & Control Commission of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007)); *accord* 11 U.S.C. § 1501(a).

A Chapter 15 proceeding is commenced by the foreign representative's filing of a petition for recognition under Section 1515. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 331 (S.D.N.Y. 2008); *accord* 11 U.S.C. §§ 1504 & 1509. A

---

[5] Carlyle Asia Growth Partners III, L.P., Carlyle Asia Partners II, L.P.; Carlyle Japan International Partners II, L.P.; CJIP II Co-Invest, L.P.; Carlyle Ensus Partners, L.P.; Carlyle Europe Partners II, L.P.; Carlyle Europe Partners III, L.P.; Carlyle Partners IV, L.P.; Carlyle Partners V, L.P., together with any alternative investment vehicles of the foregoing (collectively "Carlyle"), Clayton, Dubilier & Rice Fund VII, L.P. and any alternative investment vehicles ("Clayton") and Diamond Castle Partners IV, L.P. and any alternative investment vehicles ("Diamond") (the foregoing will be collectively referred to as the "Carlyle Entities.")

foreign representative is defined in the Bankruptcy Code as a "person or body. . .authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24); *see In re Loy*, 380 B.R. 154, 161 (Bankr. E.D. Va., Newport News Div. 2007). The Bankruptcy Code defines a foreign proceeding as "a collective judicial or administrative proceeding in a foreign country. . .under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

The Chapter 15 Petition must be accompanied by the following documentation: (i) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative; (ii) a certificate from the foreign court affirming the existence of the foreign proceeding and the appointed foreign representative; (iii) if the above two are not available, then any other evidence satisfying the court that the foreign proceeding has been commenced and the foreign representative has been appointed; and (iv) a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. 11 U.S.C. § 1515(b) & (c). Upon filing a Chapter 15 Petition, provisional relief may be granted under Section 1519, for which this Court entered an Order on April 2, 2009.

A foreign representative must satisfy the following and, if so demonstrated, the Court must then enter an order recognizing the foreign proceeding:

> (a) Subject to [the public policy exception of]⁶ section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
>
> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a); *see In re Oversight & Control Commission of Avanzit, S.A.*, 385 B.R. at 532 (citing *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 52 (Bankr. S.D.N.Y. 2008)). Simultaneously, the Court must also determine whether the recognition of the foreign proceeding is as a foreign main or foreign non-main proceeding, which the foreign representative bears the burden of proving. *Id.* A foreign main proceeding is defined as "a foreign proceeding pending in the country where the debtor has the center of its main interests." *See* 11 U.S.C. §§ 1502(4) & 1517(b)(1). A foreign non-main proceeding is defined as "a foreign proceeding. . . pending in a country where the debtor has an establishment." *See* 11 U.S.C. §§ 1502(5) & 1517(b)(2). An establishment is "any place of operations where the debtor carries out a nontransitory economic activity." *See* 11 U.S.C. § 1502(2).

Upon the Court granting recognition under Section 1517, the foreign representative has the capacity to sue and be sued in the United States and the ability to apply directly to a United States court for appropriate relief. All United States courts must grant comity and cooperation to the foreign representative. 11 U.S.C. § 1509. Section 1520 provides the relief granted to the foreign

---

⁶Section 1506 states: "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

representative upon the Court's entry of an order recognizing the foreign proceeding such as implementing the automatic stay under Section 362 and the automatic application of Sections 363, 549, and 552 to interests of the debtor in property located within the "territorial jurisdiction of the United States 'to the same extent that the sections would apply to property of the estate,'" which is necessary since Section 541 is not applicable to Chapter 15 cases.  8-1520 COLLIER ON BANKRUPTCY ¶ 1520.01 (15th ed. rev. 2008).

## II.    Application of Section 1517(a)

In the instant matter, Plaza Management bears the burden of demonstrating that it has satisfied the requirements of Section 1517(a) in order for the Court to grant recognition of the foreign proceeding. Plaza Management has satisfied that it is a foreign representative based upon the language of the Order entered in the BVI Proceeding specifically stating "Plaza Management Overseas S.A. is hereby appointed as the foreign representative of each and all of the companies within the Grand Prix Group for the purpose of contemplated cross-border insolvency proceedings." *Decl. of Tom Meganck, as Dir. of the Foreign Representative of the Pet.*, Ex. C.  Furthermore, Section 1516(a) allows a court to presume that the foreign proceeding is such if the foreign court's order states that it is a foreign proceeding and that the appointed person or entity is a foreign representative. *See* 11 U.S.C. § 1516(a). Here, the Order entered in the BVI Proceeding instituted a Plan of Arrangement under which the Foreign Debtors' assets and affairs are under the control of Plaza Management for the purpose of adjusting Grand Prix's debt with supervision by the BVI Court pursuant to the BVI Business Companies Act. *See Meganck Decl.*, Ex. C.  Plaza Management submits that the Master Settlement Agreement, once approved, will replace the Plan of Arrangement

13

consensually resolving the claims asserted against the Foreign Debtors. *See Joint Mem. of Law in Supp. of Recognition of a Foreign Proceeding as a Foreign Main Proceeding*, 13.

Moreover, Plaza Management is a "person" acting as the foreign representative as the Bankruptcy Code's definition includes "individual, partnership, and corporation". *See* 11 U.S.C. § 101(41); *In re Oversight & Control Commission of Avanzit, S.A.*, 385 B.R. 525, 540 (Bankr. S.D.N.Y. 2008). Furthermore, although neither the Model Law nor the Bankruptcy Code define "body" but "it has been recognized as 'an artificial person created by a legal authority.'" *Id.* at 540 (citation omitted). Thus, regardless of the presumption, Plaza Management has satisfied the second requirement of Section 1517(a).

Additionally, Plaza Management has established that Section 1515's requirements have been met. Specifically, Plaza Management provided a certified copy of the Order in the BVI Proceeding entered by the BVI Court attached to the *Meganck Declaration* at Exhibit C explicitly affirming the existence of a foreign proceeding in the BVI and the appointment of Plaza Management as the foreign representative. *Meganck Decl.,* Ex. C; *accord* 11 U.S.C. § 1515(b). In accordance with Section 1515(c) and Rule 1007(a)(4), Plaza Management provided a Corporate Ownership Statement and lists indicating the Foreign Debtors' known creditors and that there was no litigation pending with respect to the Foreign Debtors as of the date of the initial Chapter 15 Petition. *See Meganck Decl.*, Exs. A & B. At the time of the hearing, Plaza Management represented to the Court that an Amended List will be filed forthwith to include the pending New York state litigation which will be resolved as part of the proposed settlement. Thus, Section 1515(c) will be satisfied. Finally, the last element that the Receiver must demonstrate is whether the foreign proceeding is a foreign main or foreign non-main proceeding.

**III.     Types of Foreign Proceedings under Section 1502**

The Court must next determine whether the instant foreign proceeding is main, or in the alternative, non-main.

   **A.     Foreign Main Proceeding**

A foreign main proceeding is one that is pending in the country where the debtor has the center of its main interests. 11 U.S.C. § 1502(4); *see In re Loy*, 380 B.R. at 162. The Bankruptcy Code does not define center of main interests, referred to as "COMI". *See In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008); *In re Loy*, 380 B.R. at 162. Courts have found that the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency ("Guide") explained that the COMI was modeled after the European Union Convention on Insolvency Proceedings ("EU Convention") which states: "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." *See In re Bear Stearns,* 374 B.R. at 129 (citing Council Reg. (EC) No. 1346/2000, P 13); *see also In re Basis Yield Alpha Fund*, 381 B.R. at 47. "This generally equates with the concept of a principal place of business in United States law." *In re Basis Yield Alpha Fund*, 381 B.R. at 48 (citing *In re Tri-Continental Exchange*, 349 B.R. at 633-34); *In re Bear Stearns*, 374 B.R. at 129 (citing same).

Furthermore, Section 1516(c) explicitly provides: "In the absence of evidence to the contrary, the debtor's registered office. . .is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) (citing *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006)). Here, despite strenuous objections at the outset, the Foreign

15

Debtors, Plaza, the State Court Defendants and CS SP Parties reached a resolution and consent to recognition by this Court.

While Hellman initially put forth an objection as to the utility of the recognition at this time, the proposed settlement pursuant to Section 363 and Rule 9019 cannot properly come before this Court without recognition of the BVI Proceeding. Thus, to effectuate the proposed settlement, recognition is necessary, a finding Plaza Management argues is supported by public policy under Section 1506. As both the Master Settlement Agreement and the Termination Agreement require approval from this Court and the BVI Court, recognition is appropriate and necessary. Plaza Management also points out that recognition to facilitate the approval of the proposed settlement furthers the principles of comity and cooperation integral to Chapter 15. *See In re Oversight & Control Commission of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008) (citation omitted); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 45 (Bankr. S.D.N.Y. 2008).

In discussing Article 16 of the Model Law, the Guide provides that Section 1516 allows courts to expedite the evidentiary process, but it neither prevents the court nor another interested party from questioning the presumption. In *Bear Stearns*, the Honorable Burton R. Lifland stated that the Chapter 15 Petition process should not become a "rubber stamp exercise" when no objection is filed. *See In re Bear Stearns*, 374 B.R. at 130. This served as a departure from the decision made by the Honorable Robert D. Drain in *In re Sphinx* where the court enumerated factors that could be useful in making the COMI determination, but then found that the court should defer to the "creditors' acquiescence in or support of a proposed COMI." *See In re Sphinx, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). The well-considered factors listed in *In re Sphinx* and utilized by other courts are:

> [T]he location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*In re Sphinx*, 351 B.R. at 117; *see In re Bear Stearns*, 374 B.R. at 122; *In re Loy*, 380 B.R. at 163.

In the instant matter, the evidence before the Court demonstrates that BVI is clearly where the Foreign Debtors have their COMI. Plaza Management submits that the Foreign Debtors have had no other place of business outside of the BVI with all business and administrative matters handled in the BVI. The books and records of the Foreign Debtors are located in the BVI, with necessary operating expenses for the entities held in a bank account in the BVI. Furthermore, Plaza Management is the director of each Foreign Debtor and is organized under the laws of the BVI and maintains an office there. Moreover, any party that initially objected has since negotiated and resolved such objections and now supports recognition and entry of the proposed form of Order.

Based on the evidentiary record and the affidavits submitted, the Court is satisfied that Plaza Management has met its burden in establishing the BVI Proceeding is a foreign main proceeding as to the Foreign Debtors.

### **Conclusion**

For the foregoing reasons, the application to recognize the BVI Proceeding as a foreign main proceeding is hereby granted. An Order has been entered and a copy is attached hereto.

/s/ *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: May 18, 2009