**NOT FOR PUBLICATION**

<div style="border:1px solid">
**FILED**
JAMES J. WALDRON, CLERK

**June 26, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ D. Chrzanowski, DEPUTY
</div>

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

IN RE:

**GRAND PRIX ASSOCIATES INC..,** *et al.*

Debtors in Foreign Proceedings.

Case No.:   09-16545 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Cole Schotz, Meisel, Forman & Leonard, P.A.
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
*Co-Counsel for Petitioner Plaza Management Overseas S.A., in its capacity as the Foreign Representative*


Moses & Singer LLP
Alan Kolod, Esq.
Mark N. Parry, Esq.
Declan M. Butvick, Esq.
The Chrylser Building
405 Lexington Avenue
New York, New York 10174
*Co-Counsel for Petitioner Plaza Management Overseas S.A., in its capacity as the Foreign Representative*


Wollmuth Maher & Deutsch LLP
Paul DeFilippo, Esq.
One Gateway Center, Ninth Floor
Newark, New Jersey 07102
*Co-Counsel for the CS SP Parties*


Davis Polk & Wardwell
Lawrence Portnoy, Esq.
Thomas Ogden, Esq.
Boris Ayala, Esq.
Marcelo Blackburn, Esq.
450 Lexington Avenue
New York, New York 10017
*Co-Counsel for the CS SP Parties*

Connell Foley LLP
Stephen V. Falanga, Esq.
85 Livingston Avenue
Roseland, New Jersey 07068
*Co-Counsel to Hellman & Friedman Capital Partners VI, L.P. and*
*Blackstone Managed Investment Partnerships*


Simpson Thacher & Bartlett LLP
Mark Thompson, Esq.
Joseph M. McLaughlin, Esq.
425 Lexington Avenue
New York, New York 10017
*Co-Counsel to Hellman & Friedman Capital Partners VI, L.P. and*
*Blackstone Managed Investment Partnerships*


Pashman Stein
Sean Mack, Esq.
Court Plaza South
21 Main Street, Suite 100
Hackensack, New Jersey 07601
*Co-Counsel to Carlyle Entities*


Debevoise & Plimpton LLP
Maureen Cronin, Esq.
919 Third Avenue
New York, New York 10022
*Co-Counsel to Carlyle Entities*


Office of the United States Trustee
Donald MacMaster, Esq.
One Newark Center, Suite 2100
Newark, New Jersey 07102

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion filed by Plaza Management Overseas, S.A. ("Plaza Management" or "Petitioner"), in its capacity as foreign representative of Grand Prix Associates Inc. and its jointly administered affiliates ("Grand Prix" or "Foreign Debtors")[1], seeking approval of the Master Settlement Agreement and Transaction Agreement (hereinafter collectively referred to as "Transaction Documents")[2] pursuant to Federal Rule of Bankruptcy Procedure 9019 and Bankruptcy Code Sections 363, 1520, 1521, 1525, and 1527. The CS SP Parties[3] filed support and at the hearing Blackstone Managed Investment Partnerships and Hellman & Friedman Capital Partners VI, LLP entered their support for approval of the Petitioner's motion. In addition, the Court heard the proffered testimony of the parties and the arguments of Counsel. The facts set forth herein are taken from the record before the Court.

The Court has jurisdiction over this matter pursuant to Sections 157 and 1334 of Title 28 and Section 1501 of Title 11. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(P). Venue in the District of New Jersey is proper under 28 U.S.C. Section 1410(1) and (3) as the principal assets are located in New Jersey.

---

[1] The jointly administered affiliates are: Grand Prix Associates Inc., Bundora Associates Inc., Bundora Investments Limited, Bundora Investments N.V., Ruby Investment Sp. z.o.o., Bundora Corp., Lockhart Overseas Investments Corp., Lockhart Limited, Naven Investments Sp. z.o.o., Lockhard Corp. I, and Shelby Overseas Invest & Trade Ltd.

[2] The Transaction Documents are defined by the parties as the Master Settlement Agreement, the Transaction Agreement, the Plaza Guaranty, the Mutual Releases, and all other agreements, documents, schedules, certificates and instruments contemplated and referenced in the Master Settlement Agreement.

[3] The CS Lenders consist of CS Structured Strategies B, L.P, CS Strategic Partners Holdings IV, L.P., CS Strategic Partners IV Investments, L.P, CS Structured Strategies A, L.P., CS Structured Strategies A (RE), L.P., CS Structured Strategies B (RE), L.P., and CSFB Strategic Partners III RE Holdings, L.P. ("CS SP Parties").

**Statement of Facts and Procedural History**

**I.    Background and Events Prior to the Transaction Documents**

The Court hereby incorporates by reference and reiterates the facts recited in its prior Opinion in this case recognizing the Chapter 15 Petitions dated May 18, 2009. Certain Foreign Debtors began investing in private equity limited partnerships around April 2006 which were partially funded by Blackthorne Property, Inc. ("Blackthorne"), which obtained a registered floating charge against Grand Prix's assets. These investments were also partially funded by the CS SP Parties and these funds were used to satisfy the Foreign Debtors' capital calls. The CS SP parties took pledges of the shares of the Foreign Debtors and the Foreign Debtors pledged accounts and securities being held by Pershing LLC, located in Jersey City, New Jersey.

Due to substantially unfunded capital commitments, the Foreign Debtors commenced insolvency proceedings on March 13, 2009 in the British Virgin Islands ("BVI Proceeding") and thereafter, the Eastern Caribbean Supreme Court, High Court of Justice, BVI ("BVI Court") entered an Order appointing the Petitioner as the foreign representative with the directive to commence Chapter 15 proceedings in the United States. These proceedings were instituted due to the Foreign Debtors' belief that the CS SP Parties would foreclose upon the pledges, pledged accounts, and securities. The Foreign Debtors were also concerned that they would be unable to satisfy capital calls going forward.

On March 18, 2009, the Petitioner filed the Foreign Debtors' Chapter 15 Petitions in this Court seeking recognition of the BVI Proceeding as a foreign main proceeding. This Court approved the Petitioner's Order to Show Cause and scheduled a hearing on the provisional relief sought on March 30, 2009. On March 26, 2009, the CS SP Parties filed a motion for expedited

discovery and objection to the Order to Show Cause. Several limited partnerships also filed objections to the provisional relief. The Court entered an Order granting the provisional relief pursuant to Section 1519 on April 2, 2009 which imposed the automatic stay with respect to the Foreign Debtors' assets. Due to the strident opposition voiced by the CS SP parties and its request for expedited discovery, the Court established a discovery schedule with a briefing schedule and trial date to be determined later.

After extensive negotiations, Plaza Management filed Amended Chapter 15 Petitions on May 8, 2009 accompanied by the Transaction Documents entered into by the Foreign Debtors, the CS SP Parties, and Blackthorne. On May 18, 2009, the Court issued an Opinion and entered an Order recognizing the BVI Proceeding as a foreign main proceeding ("Recognition Order"). The Recognition Order clearly stated that the Master Settlement Agreement would be before the Court at a later date and in the event that the Court did not approve the Master Settlement Agreement then the Recognition Order would be vacated, *nunc pro tunc*, to the date immediately prior to the execution of the Master Settlement Agreement.

The substance of the objections raised by the CS SP Parties prior to the proposed settlement are evidenced by its complaint filed in the Supreme Court of the State of New York on March 24, 2009 against the principals of Grand Prix, Blackthorne, and Dickson Invest & Trade Ltd. ("Dickson") (collectively "State Court Defendants"). The CS SP Parties alleged fraudulent misrepresentation, aiding and abetting fraud, fraudulent transfer, and tortious contractual interference. The New York Court entered temporary restraints against the State Court Defendants prohibiting the transfer of assets. These restraints are to remain in place until July 16, 2009, with

a modification allowing for the implementation of the proposed settlement currently before this Court.

## II.     Transaction Documents

The result of the negotiations between Plaza Management, the Foreign Debtors, the State Court Defendants, and the CS SP Parties is the proposed Master Settlement Agreement. The Master Settlement Agreement globally resolves the disputes between the parties. When the instant application was filed, the Petitioner also requested certain Exhibits to the Master Settlement Agreement remain under seal.

The Master Settlement Agreement addresses limited partnership interests representing capital commitments in excess of $1.5 billion. Under this agreement, the parties agreed to a "sale and transfer of certain limited partnership interests from certain BVI Debtors to the CS SP Parties in exchange for monetary consideration, cancellation of indebtedness, the redemption and cancellation of certain preferred stock, and the mutual release of asserted claims and obligations among the State Court Defendants, the BVI Debtors and the CS SP Parties." *Appl. in Supp. Of Pet. Mot. for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Bankruptcy Code Sections 363, 1520, 1521, 1525 and 1527 Approving the Master Settlement Agreement and Transaction Agreement ("Pet. Mot.")*, ¶ 25. Additionally, Blackthorne will transfer back to Bundora Associates the stock of Dickson and Dickson will transfer certain limited partnership interests back to the Foreign Debtors. These transfers were previously authorized in the Recognition Order.

The parties have also agreed that the Foreign Debtors will continue to fund the capital calls through the Closing Date which Plaza Management submits is in the best interest of the Foreign Debtors, their estates and the other interested parties. In the unlikely event that the Master

Settlement Agreement is terminated, then the parties will return to their positions immediately prior to the execution of the Master Settlement Agreement.

The Transaction Agreement is between certain Foreign Debtors ("Seller" or "Sellers") and CS Strategic Partners Holdings 2009, L.P ("Purchaser") and Dickson. The Master Settlement Agreement provides for the assignment and transfer of certain limited partnership interests of the Foreign Debtors to the Purchaser. Furthermore, on a quarterly basis, the Purchaser shall pay six percent (6%) of the Net Distributions of the transferred interests to the relevant Seller subject to certain set-off rights. The aggregate amount of these payments will not exceed $70 million. The proposed settlement also resolves the pending New York State Court Action and provides for mutual releases between the parties.

## Discussion

**I.     Court's Authority under Chapter 15 of the Bankruptcy Code**

Chapter 15 of the Bankruptcy Code specifically authorizes this Court's adjudication of the instant application seeking to approve the Master Settlement Agreement and Transaction Agreement. *See* 11 U.S.C. §§ 1520, 1521, 1525, 1527. The express purpose of Chapter 15 is to promote cooperation between the courts of foreign nations and the United States in the efficient administration of cross-border insolvencies. *See* 11 U.S.C. § 1501; *In re Oversight & Control Commission of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007)).

Sections 1525 and 1527 specifically require communication and cooperation between the Court, the BVI Court, and the foreign representative with respect to the supervision and administration of the Foreign Debtors' assets including the approval of agreements related to the

coordination of proceedings. *See* 11 U.S.C. §§ 1525 & 1527. Since the Master Settlement Agreement proposes a resolution that will conclude the instant Chapter 15 proceeding, the BVI Proceeding, and the claims and issues between the parties, the goals of Sections 1525 and 1527 are expressly furthered with this Settlement Agreement. *See id.*; *In re Artimm, S.r.L.* 335 B.R. 149, 159 (Bankr. C.D. Cal. 2005).

Moreover, Section 1520 provides the relief granted to the foreign representative upon the Court's entry of an order recognizing the foreign proceeding. Specifically, Section 1520(a)(2) applies Section 363 to transfers of the debtor's interests in property that is within the territorial jurisdiction of the United States as would be applied to property of the estate under Section 541. *See* 11 U.S.C. § 1520(a)(2); 8-1520 COLLIER ON BANKRUPTCY ¶ 1520.01 (15th ed. rev. 2008). Section 1520(a)(3) also allows the foreign representative to operate the debtor's business utilizing Sections 363 and 552. *See* 11 U.S.C. § 1520(a)(3); *In re Pro-Fit Int'l Ltd.*, 391 B.R. 850, 866-67 (Bankr. C.D. Cal. 2008). In addition, Section 1521 provides the relief that may be granted upon recognition in an effort to promote Chapter 15's purposes, the efficient administration of the estate, and the protection of the debtor's assets and the creditor's interests. *See* 11 U.S.C. § 1521(a). Specifically, Section 1521(b) states: "Upon recognition of a foreign proceeding,. . . the court may . . .entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person. . .authorized by the court, provided that the court is satisfied that the interests of the creditors in the United States are sufficiently protected. 11 U.S.C. § 1521(b).

**II.     Section 363 Application to Sell and Transfer Certain Limited Partnership Interests**

In pertinent part, Section 363(b)(1) provides: "The trustee, [or debtor in possession] after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. §363(b)(1); 11 U.S.C. § 1107.  Section 363(f) states:

> The trustee [or debtor in possession] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). In addition, Section 363(m) articulates the "good faith" requirement of a Section 363 asset sale whereby:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  A finding of good faith is also required under the substantive law of the Third Circuit found in *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) ("[W]hen a bankruptcy court authorizes a sale of assets pursuant to *section 363(b)(1)*, it is required to make a finding with respect to the "good faith" of the purchaser.").  A good faith finding establishes the

"integrity of [a purchaser's] conduct in the course of the sale proceedings." *Id.* at 147. A court may not find good faith if fraud, collusion or unfair advantages are determined. *Id.* The Petitioner bears the burden of proving that they have satisfied the requirements of Section 363(f) and the good faith finding under Section 363(m). *In re Medical Software Solutions*, 286 B.R. 431, 455 (Bankr. D. Utah 2002) ("[W]hen a pre-confirmation [Section] 363(b) sale is of all, or substantially all, of the Debtor's property, and is proposed during the beginning stages of the case, the sale transaction should be 'closely scrutinized, and the proponent bears a heightened burden of proving the elements necessary for authorization.'").

Furthermore, since the proposed transaction is outside the ordinary course, Plaza Management must also prove that there is a sound business justification for the transaction pursuant to the seminal case of *In re Lionel Corporation* allowing a bankruptcy court to make findings of fact as to the sale. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). In accordance with *Lionel* and subsequent precedent within the Third Circuit, Debtors must prove the following: (1) a sound business purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith. *In re Exaeris, Inc.*, 380 B.R. at 744; *accord In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). *Lionel* provides the following factors for the Court to consider:

> [T]he proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

*In re Lionel Corp.*, 722 F.2d at 1071. A court should accept a debtor's business judgment unless there is evidence of bad faith. *See In re Sycom Enterprises, L.P.*, 310 B.R. 669, 675 (Bankr. D.N.J. 2004); *In re Aerovox, Inc.*, 260 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting *In re Logical Software, Inc.*, 66 B.R. 683, 686 (Bankr. D. Mass. 1986)).

### III.    Bankruptcy Rule 9019 Motion to Approve Settlement

Federal Rule of Bankruptcy Procedure 9019 governs compromises to which a trustee in bankruptcy is a party. A bankruptcy court may approve a compromise or settlement on motion of a trustee after notice and hearing as provided in Federal Rule of Bankruptcy Procedure 2002. FED. R. BANKR. P. 9019(a). A trustee bears the burden to show that a proposed settlement is in the best interests of the estate and the debtor. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 804 (E.D. Pa. 1986) ("[T]o meet its burden the trustee must establish that the proposed compromise is in the best interests of the estate. In this case, the trustee has not presented sufficient evidence for a court to conclude that the compromise is in the [debtor's] best interest."). In assessing the best interest to the debtor, the Court must look to the consideration for settlement. *Id.* This analysis pits the value of rights relinquished by the debtor versus the value received in return. *Id.* In determining whether to approve a proposed settlement, a court is permitted to "'take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom.'" *Id.* at 802 (citation omitted); *see* FED. R. EVID. 201.

Approval of a compromise under Rule 9019 is within the discretion of the bankruptcy court. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803. However, a court cannot sustain an objection to the settlement while granting the motion to approve the settlement. *See generally ReGen Capital III, Inc. v. Official*

*Comm. of Unsecured Creditors (In re Trism, Inc.)*, 282 B.R. 662, 666-68 (B.A.P. 8th Cir. 2002). "In so doing, the court changes the essential terms of the proposed settlement and violates the purpose and spirit of Federal Rule of Bankruptcy Procedure 9019 or decides issues not necessary . . . ." *Id.* at 667. Instead, the court's limited role is to determine whether the settlement should be approved or disapproved as proposed. *See generally id.* at 662.

"To minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *In re Martin*, 91 F.3d at 393 (citing 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)). A Court must carefully examine a proposed settlement in considering whether to approve it. *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (citing *see In re Martin*, 91 F.3d at 393 (other citation omitted)). In determining whether to approve a settlement, the court must analyze:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*In re Martin*, 91 F.3d at 393 (citing *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803); *see In re Nutraquest, Inc.*, 434 F.3d at 644 (quoting *In re Martin*, 91 F.3d at 393).

Furthermore, the Third Circuit has found that:

> In determining whether to approve the trustee's application to settle a controversy, the Bankruptcy Court does not substitute its judgment for that of the trustee. 'Nor is the court 'to decide the numerous questions of law and fact raised by [objections] but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness."

*In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803 (citations omitted).

13

"It is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation." *In re Nutraquest, Inc.*, 434 F.3d at 646 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968) (superseded by statute on other grounds) ("Litigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation.")). Balancing the complexity and delay of litigation with the benefits of settlement is part in parcel of the probability-of-success-in-litigation factor. *In re Nutraquest, Inc.*, 434 F.3d at 646 (citation omitted).

**IV.    Application and Analysis**

The Petitioner has met its burden of proving to the Court that the Master Settlement Agreement and the related Transaction Documents have been negotiated in good faith, are reasonable given the particular circumstances of this case and should be approved pursuant to Bankruptcy Rule 9019. With respect to the first *Martin* factor, the probability of success in litigation, the Petitioner submits that the outcome of litigation is unclear and is certain to be extremely costly and time consuming. It is also suggested that if the settlement were unsuccessful, then the CS SP parties would likely commence actions against the Foreign Debtors and the Foreign Debtors would have to respond with actions against the CS SP Parties. Furthermore, the CS SP Parties' support of the Recognition Order is conditioned upon the approval of the settlement. Uncertainty is also relevant to the second *Martin* factor, the difficulty in collection, because the parties cannot demonstrate at this time regardless of the outcome of litigation whether there would be a sufficient monetary collection that would benefit the estate.

14

The third *Martin* factor, the complexity of the litigation and the expense associated with it, is the most salient. Given the ardent objections raised by the CS SP Parties at the outset of these cases and the expedited discovery requested, the Court is well aware of the time and expense that this litigation would require. The legal issues involved here include foreign laws, partnership law, securities law, lender liability and various jurisdictional issues. As stated above, without the settlement, other actions would also be commenced by all parties. Lengthy litigation will be a detriment to the Foreign Debtors and their creditors. Additionally, the settlement obviates the need for discovery and trial on the threshold issue of recognition which will result in substantial savings for the estate. Finally, the settlement resolves all outstanding claims between the parties including the New York State Court Action.

The paramount interest of the creditors, the last *Martin* factor, is also furthered by this settlement. The parties maintain that the expense to the estate and the creditors if the litigation were to proceed would be immense and time consuming. Under the settlement, all capital calls are being immediately satisfied and all creditors claims are being substantially settled in full. *See Decl. of Joshua Blaine in Supp. Of Pet. Mot,* ¶ 10. Continued litigation might not yield the same result and certainly not within the same time frame. Moreover, the most ardent objector in these cases, the CS SP Parties, supports the approval of the settlement and supports the Recognition Order. The CS SP Parties specifically state:

> The Master Settlement Agreement and the other Transaction Documents unwind the 11th hour transfer of $340 million in LP Interests to Blackthorne, fairly allocate the augmented assets of the BVI Debtors between the CS SP Parties and the BVI Debtors, and provide for a global cost-effective resolution of the disputes between the parties. The alternative to approval of the Master Settlement Agreement and the other Transaction Documents is litigation in

several forums and the likely loss of many millions of dollars in value.

*Statement in Supp. of Pet. Mot.*, ¶ 2.  This settlement is clearly in the best interest of the creditors. *See In re Sycom Enterprises, L.P.*, 310 B.R. 669, 675 (Bankr. D.N.J. 2004) ("[T]he estate's creditors will be far better served by the Global Settlement because it reduces the estate's liability while simultaneously increasing its assets."). Furthermore, "compromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Condere Corp.*, 228 B.R. 615, 634 (Bankr. S.D. Miss. 1998) (citation omitted).

The Transaction Documents contemplate a Section 363 sale between certain Foreign Debtors and an entity related to the CS SP Parties. Therefore, the Court is also required to make a determination with respect to the Third Circuit law on asset sales under Section 363.  The Petitioner and the Foreign Debtors have met their burden under *Abbotts Dairies* and *Lionel* meriting approval of the sale and transfer. It is clear that the settlement and sale have sound business purpose as it resolves litigation that will be expensive and lengthy. The proposed total sale price is fair as it satisfies all obligations to creditors, capital calls through closing, and related costs. There has been reasonable and adequate notice to interested parties located in the British Virgin Islands and the United States. *See Certs. of Publication filed June 25, 2009.*  Furthermore, the instant application was filed approximately three weeks prior to the hearing providing ample time for responses.

Most importantly, the parties have demonstrated that the Purchaser has acted in good faith and without collusion. The parties involved in this settlement have been represented by separate counsel who have negotiated the terms of the agreements at arms' length since the inception of these Chapter 15 proceedings.  It is certified that there are no undisclosed terms or consideration here. *See*

16

*Decl. of Joshua Blaine in Supp. Of Pet. Mot.*, ¶ 7. The aggregate value of the transferred interests is "roughly equivalent to the principal and accrued interest of the claims of the CS SP Parties as of December 31, 2008. The CS SP Parties have agreed in the settlement not to be compensated for interest, costs and expenses accruing from January 1, 2009." *Id.* at ¶ 8. The Court finds that the CS SP Parties are good faith purchasers under the *Lionel* standard.

Moreover, the Court finds that the Master Settlement Agreement and related Transaction Documents promote the goals of Chapter 15 of the Bankruptcy Code. The parties have negotiated a transaction that resolves all pending litigation and brings the Chapter 15 proceedings and the BVI Proceeding to an amicable conclusion. This is a clear example of coordinated proceedings, which is at the crux of the Chapter 15.

Finally, the parties have requested that the ten-day stay under Bankruptcy Rule 6004 be waived. An element of the transaction and transfers must be completed by June 30, 2009 or the parties would have to wait until the end of the next quarter which is September 30, 2009. Furthermore, the existence of pending litigation hampers the Foreign Debtors' ability to conduct its business. The CS SP Parties support the waiver due to the conditions placed in the Master Settlement Agreement that a Closing take place no later than July 10, 2009 at 6pm. *See Decl. of Joshua Blaine*, ¶ 4. The Court hereby grants this request as it has been demonstrated that there is a business need in this case. *See In re Adelphia Communications Corp.*, 327 B.R. 143, 175 (Bankr. S.D.N.Y. 2005).

## Conclusion

For the foregoing reasons, the Petitioner's motion to approve a settlement under Rule 9019 and sale under Section 363 is hereby granted. An Order has been entered and a copy is attached hereto.

/s/ *Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: June 26, 2009